UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD PIERSON,

        Petitioner,                      Case No. 17-cv-11171
                                                    Hon. Matthew F. Leitman

v.

SHIRLEE HARRY,

        Respondent.

_____/

**<u>ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 1), (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS</u>**

        In 2015, Petitioner Richard Pierson faced a number of serious felony charges in state court. Those charges arose out of an armed carjacking that Pierson had confessed to committing. If convicted as charged, Pierson was facing a minimum sentence of 25 years and the possibility of multiple life sentences. Rather than risk going to trial, Pierson's counsel negotiated a very favorable plea deal. That agreement cut Pierson's minimum sentence in half and capped his maximum sentence at twenty-two years, rather than life. Pierson accepted the deal, pleaded guilty, and was sentenced to consecutive sentences of nine to twenty years on a carjacking charge and two years on a felony-firearm charge.

Despite the favorable terms of his plea deal, Pierson has now filed a *pro se* petition for writ of habeas corpus in this Court in which he seeks relief from his convictions. (*See* Pet., ECF No. 1.) He contends, among other things, that his guilty plea was involuntary and that his counsel was ineffective for advising him to accept that plea. The Court has reviewed the petition and concludes that Pierson is not entitled to habeas relief. Therefore, the Court **DENIES** the petition. The Court also **DENIES** Pierson a certificate of appealability, but it **GRANTS** him leave to proceed *in forma pauperis* on appeal.

I

The state-court record that has been filed with this Court is small because there were few proceedings in state court, and those proceedings did not reveal many of the details concerning the facts of this case. From that limited record, the Court understands the relevant facts underlying Pierson's petition to be as follows.

Pierson's convictions arose from a 2015 carjacking in Detroit. (*See* 6/2/2015 Plea Tr., ECF No. 10-2, PageID.102-103.) At some point after the carjacking occurred, the police conducted a search at the home of Pierson's girlfriend, Porsche Morrison. (*See* 6/18/15 Sent. Tr., ECF No. 10-4, PageID.110-111; Morrison Aff., ECF No. 1, PageID.24.) In connection with that search, Morrison signed a form giving police consent to search the home (the "Consent to Search Form"). (*See* 6/18/15 Sent Tr., ECF No 10-4, PageID.110.) During the search, officers located a

2

gun that they believed was used in the carjacking. (*See id.*, PageID.112.) Officers also interrogated Pierson. During that interrogation, Pierson confessed to committing the carjacking. (*See id.*, PageID.111.)

In April 2015, Pierson was charged as a fourth habitual offender with (1) carjacking, (2) felony-firearm, (3) armed robbery, and (4) concealing a stolen automobile. Pierson faced potential life sentences for the carjacking and armed robbery charges. *See* Mich. Comp. Laws § 750.529a(1), § 750.529. The fourth habitual enhancement also increased his potential sentence for receiving and concealing stolen property from five years to life. *See* Mich. Comp. Laws § 750.535(7), § 769.12(b). The state trial court also could have exercised its statutory discretion to run Pierson's carjacking sentence consecutively to Pierson's other sentences. *See* Mich. Comp. Laws § 750.529a(3).

Rather than risk trial, Pierson's counsel successfully negotiated a plea deal on his behalf. Pursuant to that agreement, Pierson pleaded guilty to the carjacking and felony firearm charges in exchange for (1) dismissal of the armed robbery and concealing a stolen automobile charges, (2) dismissal of the fourth offense habitual-offender enhancement, and (3) a sentence agreement of nine to twenty years for carjacking to be served consecutively to two years for felony firearm. (*See* 6/2/15 Plea Tr., ECF No. 10-2.)

During the plea colloquy, Pierson admitted that on April 7, 2015, he was armed with a handgun, approached a vehicle outside a liquor store, and took the vehicle from the driver by use of force or the threat of force. (*See id.*, PageID.102-103.) Pierson also acknowledged that his plea was voluntary and his own choice:

> THE COURT: Now, Mr. Pierson, if I accept your plea you're going to give up any claim that your plea was a result of promises or threats that I'm not told about today. And you're also going to give up any claim that it was not your own choice to plead guilty to these two offenses. Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> [….]
>
> THE COURT: Mr. Pierson, other than what has been said in court today has anyone promised you anything to get you to plead guilty?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT: Has anyone threatened you to get you to plead guilty?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT: Is it your own choice to plead guilty?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And are you pleading guilty because you really are guilty?
>
> THE DEFENDANT: Yes.

(*Id.*, PageID.101-102.)

Pierson appeared for sentencing on June 18, 2015. (*See* 6/8/15 Sent. Tr., ECF No. 10-4.) As the proceedings began, Pierson's counsel requested that the court adjourn the sentencing and direct the prosecution to produce the Consent to Search Form to Pierson. (*See id.*, PageID.110-111.) Counsel told the court that he had received a police report indicating that Morrison had signed the Consent to Search Form but that the form was not included in the discovery packet provided by the police department. (*See id.*) Counsel further explained that Pierson wanted the Consent to Search Form so that he could "know[] for sure that there was consent by his girlfriend that allowed them to recover the gun." (*Id.*) The prosecution refused to produce the Consent to Search Form, pointed out that Pierson had already pleaded guilty, and suggested that if Pierson wanted that form and/or additional discovery, he could withdraw his plea and proceed to trial. (*See id.*, PageID.111.) Pierson did not move to withdraw his plea at that time, and the court proceeded to sentencing. It then sentenced him consistent with the terms of his plea agreement (*i.e.*, nine to twenty years for the carjacking conviction to be served consecutively to two years for the felony-firearm conviction). (*See id.*, PageID.117.)

Six months later, Pierson filed a motion in the state trial court to withdraw his plea. (*See* St. Ct. Mot., ECF No. 10-5.) Pierson argued, among other things, that he did not commit the carjacking, that he was coerced into pleading guilty, and that his trial counsel's ineffectiveness rendered his plea involuntary. (*See id.*; *see also*

5

Pierson Aff. at ¶¶ 2-7, ECF No. 10-5, PageID.130-131.)  The state trial court denied the motion. (*See* St. Trial. Ct. Op. and Order, ECF No. 10-6.)  It explained its ruling as follows:

> In this case [] the defendant has not demonstrated any inaccurate legal advice given to him by his counsel, nor is his claim of innocence convincing in light of the statements he made on the record, admitting his guilt and establishing the factual basis for his plea. He affirmed on the record that his plea was his own choice, and that no one had promised him anything or threatened him to get him to plead guilty. Had the defendant gone to trial, he would have faced one count of carjacking (potentially a life offense), one count of robbery-armed (another potential life offense), one count of receiving and concealing of a vehicle, and one count of felony firearm. Further, with a Fourth Offense Notice, the defendant faced a life term. Instead, based on the efforts of his counsel, the plea agreement capped his incarceration at 22 years and the Fourth Offense Notice was withdrawn. The court finds, therefore, that Mr. Pierson has not demonstrated a reasonable probability that, but for his counsel's actions, the outcome of the proceedings would have been changed favorably for him.

(*Id.*, PageID.137-138.)

Pierson raised this same ineffective assistance claim in a delayed application for leave to appeal with the Michigan Court of Appeals. (*See* Mich. Ct. of Appeals Record, ECF No. 10-7.)  That court denied the application for "lack of merit in the grounds presented." *People v. Pierson*, Mich. Ct. of Appeals Case No. 332052 (Mich. Ct. App. May 6, 2016).  Pierson then filed an application for leave to appeal in the Michigan Supreme Court. (*See* Mich. Sup. Ct. Record, ECF No. 10-8.)  That

court also denied leave to appeal. *See People v. Pierson*, 888 N.W.2d 79 (Mich. Dec. 28, 2016).

On April 13, 2017, Pierson filed his current habeas corpus petition in this Court. (*See* Pet., ECF No. 1.)  He seeks relief on the ground that his defense attorney's ineffectiveness rendered his plea involuntary. (*See id.*, PageID.15.)  His claim has three primary components, and the Court will address each component separately below.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

III

A

As described above, Pierson seeks habeas relief on the ground that his trial counsel's ineffectiveness rendered his plea involuntary. A petitioner who challenges the voluntariness of a plea on the basis of ineffective assistance of counsel must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (holding that *Strickland* standard "applies to challenges to guilty pleas based on ineffective assistance of counsel"). Under that standard, a petitioner must show that his counsel's performance "fell below an objective standard of reasonableness." *Id.* at 57. The petitioner must also establish prejudice from his counsel's deficient performance. *See id.* In claims arising out of guilty pleas, a petitioner satisfies this prejudice prong by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. When determining whether prejudice exists, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S.Ct. 1958, 1967 (2017). "Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one." *Id.*

8

at 1966. In addition, a favorable plea agreement weighs against a finding of prejudice. *See*, *e.g.*, *Plumaj v. Booker*, 629 F. App'x 662, 667-68 (6th Cir. 2015) (noting that a court may consider the relative benefits of a plea agreement when assessing counsel's performance); *Pidgeon v. Smith*, 785 F.3d 1165, 1173 (7th Cir. 2015) ("The terms of a plea deal are admittedly relevant in assessing the credibility of a petitioner's claim that he would have gone to trial had he received correct information at the plea-bargaining stage").

Finally, federal claims of ineffective assistance of counsel that have been adjudicated on the merits by a state court are subject to both the deferential *Strickland* standard described above and to the deferential standard of AEDPA. *See*, *e.g.*, *Tackett v. Trierweiler*, 956 F.3d 358, 373 (6th Cir. 2020) (describing *Strickland* standard in context of habeas petition). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Id.* (internal punctuation and citation omitted).

### B

In the first component of his ineffective assistance claim, Pierson asserts that his attorney coerced him to enter a plea by placing "impermissible pressure" on him. (Pet., ECF No. 1, PageID.15.) He supports this claim with his affidavit in which he states, among other things, "[a]t the plea proceeding he was instructed to say what

9

he said by his attorney and did so because he was coerced." (Pierson Aff. at ¶7, ECF No. 10-5, PageID.131.)

Pierson attacked the validity of his plea on this same basis in his motion to withdraw his plea in the state trial court, and the state trial court rejected it.[1] (*See* St. Trial Ct. Op. and Order, ECF No. 10-6.) That court held that (1) Pierson had "affirmed on the record that his plea was his own choice, and that no one had promised him anything or threatened him to get him to plead guilty" and (2) under Michigan law, Pierson could not "undo the sworn statements he made [during his] plea" through his submission of a post-plea affidavit. (*Id.*, PageID.136-137, citing *People v Serr*, 250 N.W.2d 535 (Mich. App. 1977).)

Pierson has not shown that the state trial court's ruling was contrary to, or involved an unreasonable application of, Supreme Court precedent. As the state court accurately pointed out, a defendant is ordinarily "bound to the answers he provides during a plea colloquy." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999). And here, Pierson said during his plea colloquy that he fully understood the plea and sentencing agreement, that he was not threatened to enter a plea, that the

---

[1] Because the Michigan Court of Appeals and the Michigan Supreme Court both denied Pierson's applications for leave to appeal in orders that did not include any legal analysis or discussion, for purposes of AEDPA, the Court must "look through" those orders "to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). In this case, that decision is the state trial court's opinion and order denying Pierson's motion to withdraw his plea.

10

plea was his own choice, and that he was pleading guilty because he was guilty. (*See* 6/2/15 Plea Tr., ECF No. 10-2, PageID.101-102.) Given Pierson's sworn statements, he had no right under clearly established federal law to withdraw his plea on the contradictory ground that he was pressured to enter it. *See White v. Rewerts*, 2021 WL 4034277, at \*\* 12-17 (E.D. Mich. Sept. 3, 2021) (explaining that clearly established federal law does not require a state court to permit a criminal defendant to withdraw a plea where the defendant's sworn statements during his plea colloquy contradict the basis on which the defendant seeks to withdraw the plea).

For all of these reasons, Pierson is not entitled to federal habeas relief on this component on his ineffective assistance claim.

## C

Pierson next argues that his plea was rendered involuntary by his trial counsel's failure to obtain the Consent to Search Form and counsel's subsequent failure to move to suppress the firearm discovered during that search. Pierson's argument proceeds as follows: (1) The police tricked Morrison into signing the Consent to Search Form; (2) had counsel obtained that form prior to Pierson's plea, counsel could have consulted with Morrison about the form and would have discovered that she had not consented to a search of her apartment; (3) based on Morrison's denial of consent, counsel could have filed a successful motion to

suppress the gun found at her apartment; and (4) Pierson would not have pleaded guilty under those circumstances.

In support of this line of argument, Pierson has submitted an affidavit from Morrison. According to Pierson, Morrison's affidavit contains the information that his counsel would have discovered if had he spoken to her about the Consent to Search Form. In the affidavit, Morrison says (*in toto*):

1. On April 8, 2015, I did not give the Detroit Police consent to search my home.

2. I was forced to sign a consent form after the police searched my home.

3. The form I was forced to sign was said to be a form stating that an arrest happened at my home, not a consent to search form.

(Morrison Aff. at ¶¶ 1-3, ECF No. 1, PageID.24.)

The Court concludes that Pierson is not entitled to habeas relief on his ineffective assistance claim related to the Consent to Search Form. As an initial matter, it is not clear that Morrison's affidavit would have provided persuasive support for a motion to suppress the firearm found in her apartment. The affidavit does not include any details about how the police allegedly forced Morrison to sign the Consent to Search Form. In addition, the second and third paragraphs of the affidavit appear to be in some tension with one another. In the second paragraph of the affidavit, Morrison says that the police forced her to sign the Consent to Search

12

Form. But in the third paragraph of the affidavit, Morrison appears to suggest that the police tricked her into signing the Consent to Search Form by misleading her into believing that she was signing something else. Under all of these circumstances, it is not clear that Morrison would have been a strong witness in support of a motion to suppress. Without strong testimony by Morrison, a motion to suppress would have had little chance of success. And it seems unlikely that the prospect of filing a weak motion to suppress would have changed Pierson's decision whether to plead guilty.

Moreover, the other evidence offered by Pierson does not persuade the Court that there is a reasonable probability that he would not have pleaded guilty if he had had access to the Consent to Search Form. His primary evidence that he would not have pleaded guilty if he had seen the Consent to Search Form is his single conclusory assertion to that effect in his affidavit. That is generally not enough to establish prejudice. *See, e.g., Lee*, 136 S.Ct. at 1967.

Furthermore, the contemporaneous evidence from the time of Pierson's plea cuts against his current claim that he would not have pleaded guilty if his counsel had obtained the Consent to Search Form. At sentencing, Pierson's counsel told the state trial court that the reason Pierson wanted the Consent to Search Form was to confirm that Morrison (his girlfriend) had, in fact, signed the form. As counsel explained:

13

> And it was brought to my attention this morning, your Honor, that *Mr. Pierson said he would like to at least acknowledge if there was a form* prior to being sentenced, so that he knows for sure that there was consent by his girlfriend that allowed them to recover the gun.
>
> [….]
>
> Well, from speaking with Mr. Pierson, it's indicated to me that he believes that *if there wasn't a consent form*, that they would not have authorization to go into the house to recover this weapon.

(*See* 6/8/15 Sent. Tr., ECF No. 10-4, PageID.112.) There was no indication that Pierson wanted the Consent to Search Form in order to conduct an investigation into the lawfulness of the search. The statements by Pierson's attorney – that were not disputed by Pierson[2] – suggested that Pierson just wanted to confirm that the signed Consent to Search Form existed. And there is no dispute that it did exist. Thus, there is reason to believe that if Pierson had been provided an opportunity to see the Consent to the Search Form at the time of his plea, he would merely have confirmed its existence and then proceeded to enter his plea.

Additional contemporaneous evidence further supports the conclusion that Pierson's possession of the Consent to Search Form would not have changed his decision to plead guilty. Pierson asserts that before he pleaded guilty, he repeatedly asked his attorney to "investigate the issue of the search and to uncover the alleged

---

[2] The state court trial judge asked Pierson if he wished to say "anything," and he said "[n]o, ma'am." (6/8/15 Sent. Tr., ECF No. 10-4, PageID.116.)

consent to search document." (Pierson Aff. at ¶5, ECF No. 10-5, PageID.131.) And he insists that his counsel had done neither by the time he entered his plea. (*See id.*) Yet he nonetheless proceeded to enter his plea. That Pierson pleaded guilty even though he had not had the opportunity to review the Consent to Search Form strongly suggests that he did not regard the contents of the form as critical to his decision-making process.

Finally, the favorable plea bargain that Pierson received weighs against a finding that he was prejudiced by any claimed error by his counsel. *See, e.g., Plumaj*, 629 F. App'x at 667-68; *Pidgeon*, 785 F.3d at 1173. Here, even though the prosecution's evidence was strong, Pierson's plea allowed him to avoid the possibility of multiple life sentences and avoided the trial court exercising its discretion to impose the carjacking sentence to run consecutive to Pierson's other sentences. Under these circumstances (and those outlined above), Pierson has not shown he was prejudiced by his counsel's performance.

For all of these reasons, Pierson is not entitled to federal habeas relief on the component of his ineffective assistance claim related to the Consent to Search Form and his attorney's failure to challenge the search of Morrison's apartment.

## D

Finally, Pierson argues that his counsel should have moved to suppress his custodial confession because it was the product of police coercion. (*See* Pet., ECF

15

No. 1, PageID.22-23.) The involuntary confession claim is based on Pierson's conclusory assertion that the police threatened him. (*See id.*) But Pierson has not presented sufficient evidence to support a finding that his confession was coerced and that his attorney should have moved to suppress it on that ground. For instance, Pierson has not provided any evidence about the nature or circumstances of the interrogation, the nature or content of the alleged threat, the length of the interrogation, or about any particular tactics used by police during the interrogation. Simply put, on this record, Pierson has not shown that he had a viable motion to suppress his confession on the ground that it was coerced, and thus he has failed to show prejudice from his counsel's failure to file such a motion.

For all of these reasons, Pierson is not entitled to federal habeas relief on the component of his ineffective assistance claim related to his allegedly-coerced confession.

### III

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless the Court issues a certificate of appealability ("COA") under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28

U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court **DENIES** Pierson a certificate of appealability because jurists of reason could not debate the Court's conclusion that Pierson failed to demonstrate an entitlement to habeas relief on his claims.

Although the Court declines to issue Pierson a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability requires a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status on appeal if it finds that an appeal is being taken in good faith. *See id*. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a). Although jurists of reason would not debate this Court's resolution of Pierson's claims, an appeal could be taken in good faith. Therefore, Pierson may proceed *in forma pauperis* on appeal.

## IV

Accordingly, for all the reasons stated above, the Court (1) **DENIES WITH PREJUDICE** Pierson's petition for a writ of habeas corpus (ECF No. 1), (2) **DENIES** Pierson a certificate of appealability, and (3) **GRANTS** Pierson permission to appeal *in forma pauperis*.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: January 25, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 25, 2022, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126